Dear Representative Schneider and Mr. Stockstill:
You both reference the following cited statute in recent correspondence to this office, specifically, R.S. 11:291 (B), providing:
§ 291. Community property interest
 B. Notwithstanding any other provision of law to the contrary, any benefit or return of employee contributions shall be subject to a court order issued by a court upon or after termination of a community property regime, which order recognizes the community interest of a spouse or former spouse of a member or retiree of the retirement system and provides that a benefit or a return of employee contributions be divided by the retirement system with the spouse or former spouse, but only after a certified copy of such order has been received by the retirement system and has been determined by the retirement system to be in compliance with applicable laws, rules, and regulations governing the retirement system. (Emphasis added).
The following question is raised:
 Does the phrase "by the retirement system" apply solely to the retirement system that is set forth in the court order or does the order also apply to any other retirement system that the member becomes a participant of after the order is issued?
At the outset, we note federal law which is relevant. The Federal Employee Retirement Income Security Act of 1974 (ERISA) provides that benefits obtained under a qualifying pension plan may not be assigned or alienated. See 26 U.S.C. § 401 (a) (13) (A) and 29 U.S.C. § 1056
(d) (1). This "spend thrift" provision of ERISA was intended to "protect an employee form his own financial improvidence in dealings with third parties" and to ensure "that the employee's accrued benefits are actually available for retirement purposes." See Hawkins vs. Commissioner ofInternal Revenue, 86 F.3d 982 (U.S. 10th Cir. 1996); citations omitted, at page 987. ERISA also included a provision giving the spend thrift provision preemptive effect over contrary state law. See Hawkins, supra, at page 988, and 29 U.S.C. § 1144 (a).
In the Retirement Equity Act of 1984, the Congress created a limited exception to the spendthrift provisions of ERISA that permits qualified pension plan benefits to be divided pursuant to "qualified domestic relations orders", (QDRO). See 26 U.S.C. § 401 (a) (13) (B) and29 U.S.C. § 1056 (d) (3). The REA, and its creature the QDRO, was designed to protect the financial security of ex-spouses and defendants after divorce. See Stewart vs. Thorpe Holding Company Profit SharingPlan, 207 F.3d 1143 (US 9th Cir. 1999) at page 1146. Pursuant to29 U.S.C. § 1056 (d), a state court's domestic relations order relating to spousal property rights is a QDRO if it "creates or recognizes the existence of an alternate payee's right to . . . . receive all or a portion of the benefits payable" under a plan. See29 U.S.C. § 1056 (d) (3) (B) (i) (I).
A domestic relations order is a QDRO if the order specifies the following:
 (i) the name and the last know mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
 (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
 (iii) the number of payments or period to which such order applies, and
 (iv) each plan to which such order applies. 29 U.S.C. § 1056 (d) (3) (C) (i) — (iv);
 (Emphasis added).
These requirements primarily ensure that the payee designated by the domestic relations order is a legitimate alternate payee and that the domestic relations order does not increase the payment burden on the plan or mandate the assignment of benefits previously assigned by another QDRO. See 29 U.S.C. § 1056 (d) (3) (B) (H) (i). "[T]he purpose [of the specificity requirements] is to reduce the expense of ERISA plans by sparing plan administrators the grief they experience when because of uncertainty concerning the identity of the beneficiary they pay the wrong person, or arguably the wrong person, and are sued by a rival claimant." See Stewart, supra, at page 1148 (citations omitted).
The courts have liberally construed the criteria by which a domestic relations order will qualify as a QDRO. See Metropolitan Life Ins. Co.Vs. Wheaton, 42 F.3d 1080 (U.S. 7th Cir. 1994). In Wheaton, supra, the Seventh Circuit held that a divorce decree that failed explicitly to name the plan to which the order pertained, and failed to specify how the proceeds were to be divided between alternate payees nevertheless was sufficient to qualify as a QDRO, because there was no ambiguity as to how to dispense the proceeds of the ERISA plan.
A state court domestic relations order that distributes the community property share of an ERISA pension plan to an ex-spouse gives that ex-spouse "the right to obtain a proper QDRO." See Stewart at page 1155 (citations omitted). It is the ex-spouse as alternate payee under a valid QDRO who has standing to sue to enforce ERISA provisions and/or receive the payment of pension benefits under a proper QDRO. See29 U.S.C. § 1056 (d) (3) (A).
While it is incumbent upon the ex-spouse as alternate payee to ensure that the domestic relations order attains status as a QDRO, such responsibility does not relieve plan administrators of the fiduciary duty to ensure that an alternate payee's rights are protected pending that action. All ERISA plans must establish reasonable, written procedures to determine the qualified status of a domestic relations order, to communicate those procedures to alternate payees, and to administer the distribution of benefits under such qualified orders. See29 U.S.C. § 1056 (d) (3) (G).
Upon receipt of "any domestic relations order" a plan administrator must "promptly notify the participant and any other alternate payee of the receipt of such order" and advise them of "the plan's procedures for determining" whether the order is a QDRO. 19 U.S.C. § 1056 (d) (3) (G) (i). "[W]ithin a reasonable time after receipt of such order, the plan administrator shall determine whether such order is a [QDRO] and notify the participant and each alternate payee of [its] determination."29 U.S.C. § 1056 (d) (3) (G) (ii).
While the order's status as a QDRO is being determined, the plan administrator is required to hold and separately account for amounts that would be payable to the ex-spouse as alternate payee if and when the order is determined to be a QDRO. See 19 U.S.C. § 1056 (D) (3) (H) (i). Should the plan administrator determine that an order does not qualify as a QDRO, the beneficiary or alternate payee may appeal the plan administrator's decision to a "court of competent jurisdiction" under29 U.S.C. § 1056 (d) (3) (H) (i). See also 29 U.S.C. § 1004 (setting forth the fiduciary duties of ERISA plan administrators, which include the duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use. . .").
We also bring to your attention a new enactment of the legislature which impacts our conclusion. Act 493 of the 2001 Regular Legislative Session enacts as new law R.S. 9:2801 (B), which provides:
 Those provisions of a domestic relations order or other judgment which partitions retirement or other deferred work benefits former spouses shall be considered interlocutory until the domestic relations order has been granted "qualified" status from the plan administrator and/or until the judgment has been approved by the appropriate federal or state authority as being in compliance with applicable laws. Amendments to this interlocutory judgment to conform to the provisions of the plan shall be made with the consent of the parties or following a contradictory hearing by the court which granted the interlocutory judgment. The court issuing the domestic relations order or judgment shall maintain continuing jurisdiction over the subject matter and the parties until final resolution.
It is our recommendation that the domestic relations order clearly specify each plan to which such order applies. In circumstances such as those which prompt your question, where the retiree joins another retirement system after the original order is issued, the original order of the court should be amended to identify the new plan. Pursuant to R.S. 9:2801 quoted above, this may be accomplished by consent of the parties and an ex-parte order signed by the court issuing the original order which reflects the amendment.
Should you have further questions in which we may provide assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams